UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

RICK HEGARTY, MICHAEL MULRENAN, and
GREG MULLER,
            Plaintiffs

v.

PAUL TORTOLANO, Individually and in his
official capacity as Chief of the City of Woburn
Fire Department, JOHN C. CURRAN, Individually
and in his official capacity as Mayor of the City of
Woburn, and CITY OF WOBURN,
MASSACHUSETTS,
            Defendants

04 C.A. No. 11668 RWZ

RECEIPT # _____ MAGISTRATE JUDGE Collings
AMOUNT $ $150.00
SUMMONS ISSUED 2
LOCAL RULE 4.1 ___
WAIVER FORM ___
MCF ISSUED ___
BY DPTY. CLK. M.P.
DATE 7/27/04

**PLAINTIFFS' COMPLAINT, COMPENSATORY AND INJUNCTIVE
RELIEF REQUESTED, AND JURY DEMAND**

I.    INTRODUCTION.

1.    This is an action brought pursuant to 42 U.S.C. §1983 and the First Amendment to the United States Constitution seeking preliminary and permanent injunctive relief, as well as damages against Defendants because of their conduct in threatening, discriminating, and otherwise taking adverse action against Plaintiffs, Rick Hegarty, Michael Mulrenan and Greg Muller, because of their First Amendment protected activity. The plaintiffs, firefighters employed by the City of Woburn's ("Woburn" or "City") fire department, signed a petition addressed to the Mayor of Woburn which concerned a significant issue of public concern – problems with the quality of service provided by the Advanced Life Support company to the City. Shortly thereafter, Defendants began a campaign of discrimination and retaliation against Plaintiffs because they had signed the petition including: (1) defendant Chief of the City's Fire

1

Department, Paul Tortolano ("Fire Chief") called the Plaintiffs into his office and asked to know if they had signed the petition. When they admitted that they had signed the petition, the Fire Chief told them he would "see what I'm going to do about this"; (2) Plaintiffs were transferred to different groups and permanently reassigned to staff the rescue vehicle, an assignment that increased Plaintiffs' workload and a position that has historically been rotated among the firefighters or assigned to a junior fire fighter; (3) Plaintiffs were assigned additional duties; and (4) the Fire Chief ordered the removal of breathing equipment from the rescue vehicle that protects the safety of fire fighters when they are engaged in fighting a fire or chemical hazards. Because the issue addressed in the petition is a matter of great public concern to the citizens of the City of Woburn, because the protected speech in question has caused and will cause no disruption to the Woburn Fire Department, and because it is clear that the City has and continues to threaten retaliation and discrimination if individuals engage in their First Amendment protected activity, Plaintiffs are entitled to immediate injunctive relief.

II.   PARTIES.

2.   Plaintiff Rick Hegarty ("Hegarty") is a resident of Woburn, Massachusetts and a firefighter employed by the Woburn Fire Department.

3.   Plaintiff Michael Mulrenan ("Mulrenan") is a resident of Woburn, Massachusetts and a firefighter employed by the Woburn Fire Department.

4.   Plaintiff Greg Muller ("Muller") is a resident of Dedham, Massachusetts and a firefighter employed by the Woburn Fire Department.

5.   Defendant Paul Tortolano ("Chief Tortolano") is Chief of the Woburn Fire Department ("Fire Department") and he resides in Woburn, Massachusetts. He is sued in his individual capacity as well as his official capacity.

2

6. Defendant John C. Curran ("Mayor Curran") is Mayor of the City of Woburn and he resides in Woburn, Massachusetts. He is sued in his individual capacity as well as his official capacity.

7. Defendant City of Woburn ("City") is a duly incorporated municipality of the Commonwealth of Massachusetts, which maintains a fire department.

III. STATEMENT OF FACTS.

8. Historically, the Fire Department has utilized the services of outside Advanced Life Support, or paramedic, ("ALS") companies to provide ALS service to the City. For many years, Armstrong Ambulance had provided this ALS service. In approximately April of 2002, the ALS service was changed and thereafter it has been provided by Action Ambulance ("Action").

9. After Action began providing ALS service, firefighters in the Fire Department began observing problems with the services Action was providing including, but not limited to, poor response times and inadequate care.

10. Poor response times and/or inadequate ALS care can have a serious affect on the health and safety of the public. Prompt medical care after an accident or injury can be critical to saving a life or reducing the severity of the injury. Inadequate ALS care can also seriously impact the health and safety of the public.

11. Normally, the Fire Department responds to a medical aid call by sending the rescue vehicle (Rescue One) from Station 3 and a fire engine from the district nearest the incident. Rescue One is manned by two firefighters and the engine is manned by an officer and a fire fighter. If the ALS provider arrives in a timely fashion, one of the ALS providers joins the Rescue One and its crew with his ALS equipment and the ill or injured individual is transported

to the hospital. However, if the ALS provider is delayed in their response time, the firefighters assigned to the rescue vehicle and one of the firefighters assigned to the fire engine that is also responding to the medical aid call are sometimes required to transport the ill or injured individual(s) to the hospital. This leaves only an officer on the fire engine and the entire operation may be jeopardized.

12. On or about September 25, 2003, the Woburn Firefighters Union, Local 971 (the "Union"), held a meeting between the bargaining unit members and a mayoral candidate. Plaintiffs are all member of the Union, which represents the firefighters employed by the City. The Union asked a firefighter/bargaining unit member, Kenneth Robishaw, to speak at this meeting about the benefits of having the Fire Department provide ALS services to the City rather than having an outside Company provide these services. Defendant Chief Tortolano attended the meeting and observed Mr. Robishaw give his presentation.

13. In or around early October, 2003, a petition was posted on a bulletin board in Station 3. The petition was addressed to the Mayor of Woburn. It criticized the service provided by the City's new ALS provider, stating that "we feel the service provided by this new ALS provider has not been to the caliber and level of our previous ALS provider." It further stated, "we are waiting longer for the ALS units to arrive, and we feel the quality of care is less than what the City has been accustomed to over the past many years." It "respectfully requested" that the City "change back to our previous ALS provider." The petition stated that the undersigned "feel this change is in the best interest of the citizens of Woburn!."

14. On or about October 10, 2003, an officer, Lt. Stephen P. McDonough, and four fire fighters, Rick Hegarty, Michael Mulrenan, Greg Muller, Mark Kichton signed the petition.

15. Shortly thereafter, the petition was taken down and delivered to Defendant Chief Tortolano.

16. On or about October 15, 2003, Defendant Chief Tortolano called all of the fire fighters who had signed the petition, including Plaintiffs, down to his office. At each meeting, Defendant Chief Tortolano asked each individual if they signed the petition. They all admitted that they did. He then asked each of them why they signed the petition. Each member explained his reasoning for signing the petition. They explained that, in their opinions, they agreed with the contents of the petition. The Chief ended these meetings by stating, "well, let me see what I'm going to do about this."

17. The Fire Department operates 5 stations and bargaining unit members are assigned to one of four groups. Each group works the following schedule: one day on, one day off, one day on, five days off.

18. On October 25, 2003, Chief Tortolano issued a Department Order instituting a series of transfers, including the transfer of Plaintiffs Hegarty and Muller, to different groups and stations. Prior to the October 25, 2003 Order, Plaintiffs had all been assigned to Group 2 at Station 3. Hegarty was transferred from Group 2, Station 3 to Group 1, Station 3. Muller was transferred from Group 2, Station 3 to Group 3, Station 3. Mulrenan remained assigned to Group 2, Station 3. Another petition signer, Mark Kichton, was transferred from Group 1, Station 1 to Group 4, Station 3.

19. By making the transfers, the Chief assigned four of the petition signers to each of the four groups assigned to Station 3.

20. The Fire Department operates two rescue vehicles out of Station 3. All firefighters hired after a specific date are required to have Basic Life Support training (EMT Basic) which

5

allows them to respond to medical aid calls. In responding to medical aid calls, the firefighters are responsible for providing Basic Life Support and the ALS company is responsible for providing Advanced Life Support. Rescue One is manned full time with two firefighters. Rescue Two is a backup rescue vehicle and it is only activated if Rescue One is on a call when a second medical aid call comes in. In that case, the two firefighters on Engine 3 (also assigned to Station 3) take Rescue Two and respond to the second medical aid call.

21. Prior to 1999, assignments to Rescue One were made on a rotating basis in which every firefighter EMT (except officers and specialist) had to do one year on Rescue One. Every year, two firefighters in each group (8 total) were assigned to Rescue One for only one year due to the high incidence of "burnout" associated with this position.

22. After 1999, Chief Tortolano changed the method of rescue vehicle assignments. Thereafter, he permanently assigned 6-8 firefighters per group to Station 3 (where the rescue vehicles are housed). Chief Tortolano then left it to the captain in each group to decide how to assign firefighters to each piece of equipment at Station 3, including Rescue One. Some captains chose to make assignments based on seniority and some captains would rotate the assignments between the bargaining unit members assigned to Station 3.

23. On November 2, 2003, Chief Tortolano issued an order changing the policy with respect to Rescue One assignments. Rather than allowing the captains to determine assignments, Chief Tortolano assigned four of the bargaining unit members who had signed the petition – Plaintiff Hegarty, Plaintiff Mulrenan, Plaintiff Muller and Kichton – *permanently* to Rescue One on their respective workshifts. Another bargaining unit member who had spoken out in favor of having the Fire Department provide the ALS service, Robishaw, was permanently assigned to

dispatch on his workshift. The Order states that assignments are "due to ALS service quality concerns recently recognized by this office."

24. After assigning Plaintiffs Hegarty, Mulrenan and Muller permanently to the rescue vehicle, Chief Tortolano continued his campaign of retaliation and discrimination against them by not allowing them to swap their Rescue assignments with other bargaining unit members. Historically, fire fighters have always been allowed to swap assignments so long as they inform their captain. However, Chief Tortolano has directed officers to not allow Plaintiffs to swap assignments. All other bargaining unit members, including the other personnel assigned by seniority or rotation to the rescue vehicle, continue to be allowed to swap assignments.

25. Plaintiffs' permanent assignment to Rescue One has increased their work load. This is because employees assigned to Rescue One are required to go on every medical aid and reported fire call whereas employees assigned to the engine in each of the five districts are only required to respond to the fire and medical aid calls in their district. As a result, employees assigned to Rescue One are required to go on five times as many medical aid calls as other bargaining unit members. The medical aid calls represent the vast majority of the emergency call responses, averaging approximately 3,200-3,600 per year. The remaining calls average approximately 2,000 per year. Thus, by assigning four of the petitioners permanently to Rescue One, he was requiring them to respond to 8 to 10 calls per day.

26. Additionally, the rescue assignment is generally considered a less desirable assignment among members of the Fire Department and, as a result, the assignment is often held by junior firefighters/EMTs because it is considered a less desirable assignment within the Department.

27. Defendants assigned Plaintiffs to Rescue One in retaliation for their signing the petition critical of the Town's present ALS provider.

28. Defendants retaliated against another member of the Fire Department, Lt. Stephen P. McDonough, who signed the petition. Defendant Chief Tortolano assigned Lt. Stephen P. McDonough the additional responsibility of keeping a running log of reports from the firefighters relating to ALS incidents/concerns. No other officer or fire fighter is required to keep such a running log.

29. Defendants discriminated and retaliated against another member of the Fire Department, Kenneth Robishaw, who had spoken out in favor of having the Fire Department, rather than an outside company, provide ALS service to the City. Pursuant to Defendant Chief Tortolano's November 2, 2003 order, Robishaw was permanently assigned to the less desirable position of dispatcher.

30. In or around November 5, 2003, the Union filed a grievance protesting the transfers and reassignments of Plaintiffs, as well as the other petition signers and Robishaw. In early January, 2004, the Union President received a letter from the City's Solicitor, stating that the City would try to settle the Union's grievance only if each of the petition-signers and Robishaw signed a letter repudiating their concerns about the ALS service and stated, "it is our belief that the current provider of ALS services has met all of the contractual obligations in a timely and professional manner. Therefore, any and all concerns previously expressed regarding ALS services have been alleviated or never existed." Plaintiffs and the Union refused to agree to Defendants' outrageous demand.

31. In or around late January, 2004, the Union met with Defendant Mayor Curran and Defendant Chief Tortolano and voiced the Union's objection to Defendants' retaliation and

discrimination against firefighters who had signed the petition and spoken at the mayoral candidate's meeting. The Union demanded that Defendants rescind the permanent assignments to the rescue vehicle and reassign the firefighters, including Plaintiffs, back to their original assignments. Defendant Mayor stated that the City would rescind the assignments only if the Union agreed to state that the Union did not have any problem with the ALS service.

32. In or around the end of February, 2004, Defendants continued their campaign of harassment and discrimination against individuals, including Plaintiffs, who had signed the petition, by ordering the removal of the SCBA (or, "Scott") packs from the rescue vehicles.

33. Historically, Rescue One has always been equipped with two Scott packs. Scott packs are air containers with breathing apparatus that allow firefighters to enter smoke filled buildings to rescue citizens and prevent them from being overcome by smoke and/or fumes. Rescue One has been equipped with Scott packs because in the event that a fire, Rescue One is one of the Department's apparatus that is required to respond. By ordering the removal of the Scott packs from Rescue One, Defendants are endangering the safety of the public, the Plaintiffs, and other members of the Fire Department.

34. The actions of Defendants in assigning Plaintiffs to the less desirable position on Rescue One, not allowing them to swap assignments with other firefighters and removing the Scott packs from Rescue One were intended to prevent Plaintiffs in the future from speaking about Advanced Life Support safety issues that are matters of public concern.

35. As a result of the action of Defendants as set forth above, Plaintiffs and other members of the Woburn Fire Department are fearful of making any public statements which are critical of the Advanced Life Support provided by the City's current ALS provider or that address the issue of fire fighter and public safety.

9

36. Defendants are singling out Plaintiffs for discrimination and retaliation in order to prevent them and other fire fighters from publicly speaking about a particular issue of public concern.

37. Preliminary injunctive relief is required because without the granting of such relief, Plaintiffs and other fire fighters in the Woburn Fire Department will be stifled in their attempt to communicate their belief that the inadequate ALS service provided by the current ALS provider constitutes a threat to the public safety of the citizens of Woburn, as well as to members of the Woburn Fire Department.

## COUNT I

38. The conduct of Defendants as set forth above constitutes a violation of the First Amendment to the United States Constitution.

WHEREFORE, this Court is requested to issue preliminary and permanent injunctive relief reassigning Plaintiffs to their former assignments and barring Defendants from preventing Plaintiffs from publicly stating their disapproval with the ALS service provided to the City of Woburn and the threats to public and fire fighter safety posed by this inadequate ALS service, either in petitions or in any other public forum. In addition, the Court should award Plaintiff damages, punitive damages, costs and attorney's fees, all as provided by law.

## JURY DEMAND

To the extent that any issues are not resolved by preliminary or permanent injunctive proceedings, Plaintiff demands a trial by jury on any other remaining claims.

Respectfully submitted,

RICK HEGARTY, MICHAEL MULRENAN, and
GREG MULLER,
By their attorneys,

Dated: 7/27, 2004

Terence E. Coles, BBO #600084
Pyle, Rome, Lichten & Ehrenberg, P.C.
18 Tremont St., Ste. 500
Boston, MA 02108
(617) 367-7200

JS-44
(Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
Rick Hegarty, Michael Mulrenan and Greg Muller

**DEFENDANTS**
Paul Tortolano, Individually and in his capacity as Chief of the City of Woburn Fire Department, John C. Curran, Individually and in his official capacity as Mayor of the City of Woburn, and City of Woburn, MA

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** Middlesex
(EXCEPT IN U.S. PLAINTIFF CASES)

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT** Middlesex
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c) ATTORNEYS** (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Terence E. Coles, Esquire
Pyle, Rome, Lichten, Ehrenberg & Liss-Riordan, PC
18 Tremont St., Boston, MA 02108

**ATTORNEYS** (IF KNOWN)
Nicholas Anastasopoulos, Esq.
Mirick O'Connell
100 Front Street
Worcester, MA 01608-1477

04 11668 RWZ

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)
- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | PERSONAL PROPERTY | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | HABEAS CORPUS: | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☒ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | ☐ 871 IRS — Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)
First Amendment of the U.S. Constitution, pursued pursuant to 42 U.S.C., §1983

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
**DEMAND $**
**JURY DEMAND:** ☐ YES ☐ NO
CHECK YES only if demanded in complaint:

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE _____ DOCKET NUMBER _____

**DATE** July 27, 2004
**SIGNATURE OF ATTORNEY OF RECORD** _____

FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY) Rick Hegarty, et al v. Paul Tortolano, et al

2. CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL COVER SHEET. (SEE LOCAL RULE 40.1(A)(1)).

___ I.   160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

_X_ II.  195, 368, 400, (440,) 441-444, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.
         *Also complete AO 120 or AO 121 for patent, trademark or copyright cases

___ III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891.

___ IV.  220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900.

___ V.   150, 152, 153.

04 11668 RWZ

3. TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(G)). IF MORE THAN ONE PRIOR RELATED CASE HAS BEEN FILED IN THIS DISTRICT PLEASE INDICATE THE TITLE AND NUMBER OF THE FIRST FILED CASE IN THIS COURT.

_____

4. HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?                                                               YES        (NO)

5. DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC INTEREST? (SEE 28 USC §2403)                                  YES        (NO)

   IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?
                                                                          YES         NO

6. IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 USC §2284?                                                    YES        (NO)

7. DO ALL OF THE PARTIES IN THIS ACTION, EXCLUDING GOVERNMENTAL AGENCIES OF THE UNITED STATES AND THE COMMONWEALTH OF MASSACHUSETTS ("GOVERNMENTAL AGENCIES"), RESIDING IN MASSACHUSETTS RESIDE IN THE SAME DIVISION? - (SEE LOCAL RULE 40.1(D)).
                                                                         (YES)        NO

   A. IF YES, IN WHICH DIVISION DO ALL OF THE NON-GOVERNMENTAL PARTIES RESIDE?
      (EASTERN DIVISION)          CENTRAL DIVISION          WESTERN DIVISION
      Middlesex

   B. IF NO, IN WHICH DIVISION DO THE MAJORITY OF THE PLAINTIFFS OR THE ONLY PARTIES, EXCLUDING GOVERNMENTAL AGENCIES, RESIDING IN MASSACHUSETTS RESIDE?
      EASTERN DIVISION            CENTRAL DIVISION          WESTERN DIVISION

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME Terence E. Coles
ADDRESS Pyle, Rome, Lichten, Ehrenberg & Liss-Riordan, PC, 18 Tremont St., Boston, MA 02108
TELEPHONE NO. 617-327-7200

(Cover sheet local.wpd - 11/27/00)