UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RICK HEGARTY, MICHAEL MULRENAN )
AND GREG MULLER )
      Plaintiffs )
 )
VS. )
 )
 ) C.A. No.04 11668 RWZ
PAUL TORTOLANO, individually and in his official )
Capacity as Chief of the City of Woburn Fire )
Department, JOHN C. CURRAN, Individually )
And in his official capacity as Mayor of the City of )
Woburn, and CITY OF WOBURN, MASSACHUSETTS )
      Defendants )
 )

**ANSWER OF THE DEFENDANTS TO PLAINTIFFS'**
**COMPLAINT AND JURY CLAIM**

The defendants hereby answer the plaintiffs' Complaint, paragraph by paragraph, as follows:

### I.  INTRODUCTION

1.  The defendants admit that the Complaint seeks damages and injunctive relief. The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations regarding the petition. Further answering, the defendants admit that a meeting occurred between the plaintiffs and Chief Tortolano and Captain Mills but deny the remaining allegations contained in this paragraph.

### II.  PARTIES

2.  The defendants admit that Rick Hegarty is a firefighter employed by the City of Woburn but defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.

3.  The defendants admit that Michael Mulrenan is a firefighter employed by the City of Woburn but defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.

4.      The defendants admit that Greg Muller is a firefighter employed by the City of Woburn but defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.

5.      The defendants admit that Paul Tortolano is the Chief of the Fire Department and resides in Woburn. The remaining allegations call for a legal conclusion which the defendants are not qualified to make.

6.      The defendant admits that the John Curran is the Mayor and resides in Woburn. The remaining allegations call for a legal conclusion which the defendants are not qualified to make.

7.      The defendants admit the allegations contained in this paragraph.

### III.    STATEMENT OF FACTS

8.      The defendants admit so much of the first two sentences of Paragraph 8 as alleges that the Fire Department utilizes the services of outside paramedic companies to provide Advanced Life Support ("ALS") service to the City. The defendants deny the last sentence of Paragraph 8. Further answering, the defendants state that Armstrong Ambulance provided ALS service from 1985 to 2003. On or about June 1, 2003, Action Ambulance began providing ALS services to the City.

9.      The defendants deny the allegations contained in this paragraph. Further answering, as of the date of this Answer, the plaintiffs have failed to identify and document instances in which the ALS services provided by Action Ambulance have been inferior to those previously provided by Armstrong Ambulance.

10.     The defendants admit the allegations contained in this paragraph. Further answering, as of the date of this Answer, the plaintiffs have failed to identify and document instances in which the ALS services provided by Action Ambulance have been inferior to those previously provided by Armstrong Ambulance.

11.     The defendants admit the allegations contained in the first sentence of this paragraph. The defendants deny the remaining allegations contained in this paragraph. Further answering, the defendants state that the City, on or about June 1, 2003, changed ALS providers (Armstrong to Action) but did not change its policy with regards to the method and means by which ALS services would be provided by Action Ambulance to the City of Woburn. Accordingly, the duties and responsibilities of the firefighters and fire officers responding to medical aid calls have remained the same despite the City's use of a different ALS provider.

12.     The defendants admit that a meeting occurred on or about September 25, 2003 between bargaining unit members and a Mayoral candidate. The defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in the second sentence of this paragraph regarding the plaintiffs' membership in the Union. Further answering, the defendants state that the

Mayoral candidate was former City Councilor Brian Melanson and the meeting was held at Fire Department Station 3. The defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in the third sentence so much as alleges that the Union asked firefighter Robishaw to make a presentation about ALS services. The defendants admit so much of the allegation set forth in the fourth sentence as alleges that Chief Tortolano was in attendance during the Union's meeting with Mayoral candidate Melanson.

13. The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of this paragraph. The remaining allegations of Paragraph 13 purport to characterize a document that speaks for itself and requires no answer.

14. The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

15. The defendants admit that Chief Tortolano received the petition but are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.

16. The defendants admit so much of the allegations set for the in the first two sentences of paragraph 16 as alleges that Chief Tortolano met with the firefighters who signed the petition, including the plaintiffs but deny that the meetings took place in his office. Further answering, the defendants state that Chief Tortolano and Captain Mills met with each signatory between October 16, 2003 and October 20, 2003, depending on their shifts and availability.[1] The defendants admit so much of the fifth and sixth sentences of this paragraph as alleges that the plaintiffs expressed their opinions about the quality of the ALS service provided by Action Ambulance. Further answering, the defendants state that these interviews presented the first time any member of the Fire Department complained about Action's services to Chief Tortolano. Additionally, the defendants deny the exact quote attributed to Chief Tortolano but admit that Chief Tortolano advised the petitioners that he intended to investigate and address their concerns regarding the quality of ALS services delivered by Action Ambulance.

17. The defendants admit the allegations contained in this paragraph.

18. The defendants admit the allegations contained in this paragraph. Further answering, the defendants state that Chief Tortolano's Departmental Order assigned one of the four firefighters to the Department's ambulance at all times in order to ensure the proper documentation of instances that firefighters were "waiting longer" or the "quality of care" was inferior to that previously experienced and provided by Armstrong Ambulance.

19. The defendants admit the allegations contained in this paragraph.

---

[1] Chief Tortolano did not interview the following individuals who signed the "petition": Red Buttons, Grady Little League, Nelson Mendella [sic] and the Pope.

20. The defendants admit so much of the first sentence of this paragraph as it states that two rescue vehicles are housed at Station 3. As to the allegations in the second sentence of this paragraph, all firefighters are required to have Basic Life Support training (EMT Basic) but defendants deny the remaining allegations in this sentence. The defendants admit the allegations contained in the third and fourth sentences. With regard to the fifth sentence, the defendants admit that Rescue One is a backup rescue vehicle but deny the remaining allegations contained in this sentence. The defendants deny the allegations contained in the last sentence of this paragraph.

21. The defendants deny the allegations contained in this paragraph.

22. The defendants deny the allegations set forth in the first sentence of this paragraph. The defendants admit the remaining allegations contained in this paragraph. Further answering, the defendants state that the Union did not file any charges related to ambulance assignments in 1999 and Chief Tortolano never relinquished his management right to assign employees to any Group, Station or apparatus.

23. The defendants deny the allegations set forth in the first sentence of this paragraph. Further answering, the defendant states that Chief Tortolano did not change policy, but rather changed the firefighters' specific assignments, as is his prerogative under the collective bargaining agreement and the law. The defendants admit so much of the second sentence of this paragraph as alleges that the four signatory firefighters were assigned to the ambulance on their respective shifts. The defendants admit so much of the third sentence of this paragraph as alleged firefighter Robishaw was assigned to the dispatch desk on his work shift. All other allegations in the second and third sentences of this paragraph are denied. The last sentence of this paragraph purports to characterize portions of a document that speaks for itself and requires no answer.

24. The defendants deny the allegations contained in this paragraph.

25. The defendants deny the allegations contained in this paragraph. Further answering the defendants state that firefighters assigned to the rescue receive a forty-dollar ($40.00) stipend per week to respond to an average of 8 to 10 rescue calls per 24-hour shift. Answering further, firefighters assigned to the rescue are typically not required to perform traditional firefighter duties such as, but not limited to, in-service inspections, "plug-ins and plug-outs", smoke detector inspections and water problem remediation.

26. The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegation that the rescue assignment is generally considered a less desirable assignment. The defendants deny the remaining allegations contained in this paragraph.

27. The defendants deny the allegations contained in this paragraph.

28. The defendants admit that Chief Tortolano assigned Lieutenant McDonough the task of keeping a log of reports from the firefighters relating to ALS

incidents/concerns. The defendants deny that it was in retaliation for signing the petition. Further answering, the defendants state that as of the date of this Answer, no log has been kept.

29. The defendants admit that Kenneth Robishaw was assigned to dispatch. The defendants deny the remaining allegations contained in this paragraph. Further answering, the defendants state that the dispatch position also receives a stipend and that manning dispatch is within the realm of a firefighter's duties.

30. The defendants admit that a grievance was filed and that the City Solicitor sent a letter and state that the documents speak for themselves. The defendants admit that the plaintiffs refused the offer of settlement. The defendants deny that the demands were outrageous.

31. The defendants admit there was a meeting. The defendants deny the plaintiffs' characterizations of what occurred.

32. The defendants deny the allegations contained in this paragraph.

33. The defendants deny the allegations contained in this paragraph.

34. The defendants deny the allegations contained in this paragraph.

35. The defendants deny any of the conduct attributed to them. The defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.

WHEREFORE, the defendants deny that the plaintiffs are entitled to judgment in any amount against the defendants and, furthermore, the defendants request this Honorable Court to enter judgment for the defendants and against the plaintiffs along with interests, costs and attorneys fees.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

By way of affirmative defense, the defendants state that the plaintiffs' Complaint fails to state a cause of action upon which relief can be granted.

### SECOND DEFENSE

By way of affirmative defense, the defendants state that the plaintiffs' complaint should be dismissed because he has failed to exhaust his administrative remedies.

### THIRD DEFENSE

By way of affirmative defense, the defendants state that their acts or omissions are immune from suit as they were discretionary functions.

### FOURTH DEFENSE

By way of affirmative defense, the defendants state that their actions are entitled to a good faith immunity.

### FIFTH DEFENSE

By way of affirmative defense, the defendants state that they were justified in their conduct and acts and the plaintiff therefore cannot recover.

### SIXTH DEFENSE

By way of affirmative defense, the defendants state that they were privileged in their conduct and acts and the plaintiff therefore cannot recover.

### SEVENTH DEFENSE

By way of affirmative defense, the defendants state that they are entitled to qualified immunity from suit because at all times material they acted reasonably, within the scope of their official discretion, and with a good faith belief that their actions were lawful and not in violation of any clearly established statutory or constitutional right of which a reasonable person would have known with regard to all matters in the complaint which bear on a question of state or federal law.

### EIGHTH DEFENSE

By way of affirmative defense, the defendants state that the applicable statute of limitations precludes the plaintiff from recovering.

### NINTH DEFENSE

By way of affirmative defense, the individual defendants are entitled to common law immunity.

### TENTH DEFENSE

By way of affirmative defense, the defendants state that no act or omission by them was a proximate cause of damages, if any, allegedly sustained by the plaintiff.

## JURY CLAIM

THE DEFENDANTS CLAIM A TRIAL BY JURY AS TO ALL ISSUES PROPERLY TRIABLE TO A JURY.

> Defendants,
> By their attorneys,
> BRODY, HARDOON, PERKINS & KESTEN, LLP
>
> /s/ Leonard H. Kesten
> Leonard H. Kesten. BBO No. 542042
> One Exeter Plaza
> Boston, MA 02116
> (617) 880-7100

Dated: October 5, 2004